UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| Donald Fuller,<br><br>    Plaintiff,<br><br>   v.<br><br>Hannah Smith, an individual, PZcoin.io, a business association, Anthony Zhou, an individual, Harry King Law Firm, a business association, Liante Industrial Co., Limited,, a business entity, Wei Si, an individual, Ychen Trade Co., Limited, a business entity, Fen Chen, an individual, Wen Wen Trading, Inc., a business entity, Wen Shen, an individual, DBS Bank (Hong Kong) Limited, a business entity, Yan Xu, an individual, and John Does 1 – 20,<br><br>    Defendants, | Case No. 2:25-cv-00204-Z |

**DBS BANK (HONG KONG) LIMITED'S BRIEF IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND
<u>FAILURE TO STATE A CLAIM</u>**

**Table of Contents**

I.    INTRODUCTION ................................................................................................. 1

II.   RELEVANT FACTUAL BACKGROUND ......................................................... 3

III.  ARGUMENT ...................................................................................................... 5

  A.   The Court Lacks Personal Jurisdiction Over DBS Hong Kong ......................... 5

    1.   No General Jurisdiction ................................................................................ 5

    2.   No Specific Jurisdiction ............................................................................... 6

    3.   The Exercise of Personal Jurisdiction Would Be Unreasonable .................... 8

  B.   Plaintiff's Substantive RICO Claims Fail (Counts I) ..................................... 10

    1.   Plaintiff Fails to Establish that DBS Hong Kong Participated in an Alleged Enterprise. 11

    2.   The Complaint Fails to Allege a Pattern of Racketeering Activity ................ 12

  C.   Plaintiff's RICO Conspiracy Claim Fails (Count II) ...................................... 13

  D.   Plaintiff's Conversion Claim Fails (Count III) ............................................... 15

  E.   Plaintiff's Fraud Claim Fails (Count IV) ........................................................ 16

  F.   Plaintiff's Aiding and Abetting Claims Fails (Count V & VI) ......................... 17

  G.   Amendment Would Be Futile .......................................................................... 18

IV.   CONCLUSION ................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. CitiMortgage, Inc.*,
2011 WL 1113494 (E.D. Tex. Mar. 24, 2011) .......................................................................... 13

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,
480 U.S. 102 (1987) .......................................................................................................................... 9

*BancOklahoma Mortg. Corp. v. Capital Title Co.*,
194 F.3d 1089 (10th Cir. 1999) ................................................................................................... 12

*Beasley v. Greenlee*,
2024 WL 3851382 (N.D. Tex. July 25, 2024) .............................................................................. 2

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402 (2017) .......................................................................................................................... 6

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ....................................................................................................................... 8, 9

*CDC Real Estate Corporation v. La Biela, L.L.C.*,
2025 WL 2219009 (5th Cir. Aug. 5, 2025) .............................................................................. 6, 7

*Chay v. Montiel*,
2025 WL 972829 (S.D. Tex. Mar. 11, 2025) ........................................................................ 11, 12

*Crichton v. Golden Rule Ins. Co.*,
576 F.3d 392 (7th Cir. 2009) ....................................................................................................... 12

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ....................................................................................................................... 5, 6

*Davis-Lynch, Inc. v. Moreno*,
667 F.3d 539 (5th Cir. 2012) ....................................................................................................... 14

*Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*,
376 F.3d 399 (5th Cir. 2004) ....................................................................................................... 14

*First United Pentecostal Church v. Parker*,
514 S.W.3d 214 (Tex. 2017) ........................................................................................................ 17

*Garcia Hamilton & Assocs., L.P. v. RBC Capital Mkts., LLC*,
466 F. Supp. 3d 692 (S.D. Tex. 2020) ......................................................................................... 6

*Getagadget, L.L.C. v. Jet Creations Inc.*,
2022 WL 964204 (5th Cir. Mar. 30, 2022) ................................................................ 7

*Goodweather v. Parekh*,
2021 WL 4149030 (E.D. Va. Sept. 10, 2021) .......................................................... 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ..................................................................................................... 5

*Gutierrez v. Venegas*,
2021 WL 9314946 (N.D. Tex. Sept. 8, 2021) .................................................... 12, 14

*Hampton v. Equity Tr. Co.*,
607 S.W.3d 1, 2 (Tex. App.—Austin 2020, pet. denied) ..................................... 3, 17

*Harris v. Lloyds TSB Bank, PLC*,
281 F. App'x 489 (6th Cir. 2008) .......................................................................... 8, 9

*Ison-Newsome v. JPMorgan Chase Bank, Nat'l Ass'n*,
2023 WL 5022287 (N.D. Tex. July 21, 2023) ......................................................... 17

*Lerner v. Colman*,
485 F. Supp. 3d 319 (D. Mass. 2020) ...................................................................... 12

*Liberty Mut. Ins. Co. v. Diamante*,
138 F. Supp. 2d 47 (D. Mass. 2000) ........................................................................ 12

*Licht v. Binance Holdings Ltd.*,
2025 WL 625303 (D. Mass. Feb. 5, 2025) .............................................................. 13

*Molina-Aranda v. Black Magic Enters., LLC*,
983 F.3d 779 (5th Cir. 2020) ............................................................................ 11, 13

*Monkton Ins. Servs., Ltd. v. Ritter*,
768 F.3d 429 (5th Cir. 2014) ........................................................................ 2, 6, 7, 8

*Reves v. Ernst & Young*,
507 U.S. 170 (1993) ........................................................................................ 2, 10, 11

*Seiferth v. Helicopteros Atuneros, Inc.*,
472 F.3d 266 (5th Cir. 2006) .................................................................................... 9

*Shawmut Worcester Co. Bank v. First Am. Bank & Trust*,
731 F. Supp. 57 (D. Mass. 1990) ............................................................................. 16

*Sinclair Houston Fed. Credit Union v. Hendricks*,
268 S.W.2d 290 (Tex. App.—Galveston 1954, writ ref'd n.r.e.) ............................. 16

*Thuney v. Lawyer's Title of Az.*,
  2019 WL 467697 (D. Ariz. Feb. 6, 2019) ................................................................7, 8

*United States v. Boardwalk Motor Sports, Ltd.*,
  692 F.3d 378 (5th Cir. 2012) ...................................................................................15

*Vlasek v. Wal-Mart Stores, Inc.*,
  2007 WL 2402183 (S.D. Tex. Aug. 20, 2007) ..........................................................18

*Walden v. Fiore*,
  571 U.S. 277 (2014) ..............................................................................................5, 7

*Zidell v. East West Bank*,
  2025 WL 919385 (N.D. Tex. Mar. 26, 2025) ..........................................................2, 8

**Statutes**

18 U.S.C. § 1962 ................................................................................................. *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) ..........................................................................1

Federal Rule of Civil Procedure 12(b)(6) ..........................................................................1

Federal Rule of Civil Procedure 9(b) ...............................................................................11

Defendant DBS Bank (Hong Kong) Limited ("DBS Hong Kong"), hereby moves, pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), to dismiss all claims against it in the Complaint filed by Plaintiff Donald Fuller ("Plaintiff"), and in support thereof respectfully shows as follows:

## I.    INTRODUCTION

Plaintiff filed this action alleging that he was defrauded in connection with a cryptocurrency scheme orchestrated by certain overseas actors. According to the Complaint, these individuals induced Plaintiff to invest through an online cryptocurrency trading platform known as PZCoin.com, to which Plaintiff allegedly contributed more than $1.2 million. One of the named defendants is DBS Hong Kong, a foreign financial institution incorporated and headquartered in Hong Kong that has no operations or permanent presence in the United States and that does not solicit business in the United States. Plaintiff does not allege that DBS Hong Kong was an active or knowing participant in the purported scheme, but was rather "inadvertently" involved. Compl. ¶ 4. The sole basis for Plaintiff's claims against DBS Hong Kong is the allegation that he made three wire transfers to foreign entities that owned and controlled accounts with DBS Hong Kong. On this attenuated basis, Plaintiff attempts to group DBS Hong Kong with the alleged bad actors and seeks to hold the bank liable for racketeering, fraud, conversion, and aiding and abetting. For the reasons set forth below, Plaintiff's claims against DBS Hong Kong should be dismissed.

First, Plaintiff's claims fail because this Court lacks personal jurisdiction over DBS Hong Kong, a bank incorporated and headquartered in Hong Kong and with no operations or presence in the United States. Plaintiff alleges no facts that would render DBS Hong Kong "at home" in Texas or show that it purposefully availed itself of the laws and privileges of the United States. The only connection Plaintiff alleges is that certain account holders at DBS Hong Kong received

three wire transfers of approximately $250,000, $410,000, and $200,816. That is insufficient to establish personal jurisdiction as a matter of law. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (finding wire transfers were insufficient to confer jurisdiction over a bank); *Zidell v. East West Bank*, 2025 WL 919385, at *3–4 (N.D. Tex. Mar. 26, 2025) (dismissing claims against banks who processed wires related to an internet scam for lack of personal jurisdiction).

Second, Plaintiff's claims also fail because they are substantively insufficient to state a claim against DBS Hong Kong under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. Plaintiff pleads no facts (let alone with particularity) establishing that DBS Hong Kong operated or managed an enterprise or engaged in any racketeering activity, much less a pattern of such activity, all of which are necessary to establish a viable RICO claim. *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (establishing defendant played "*some* part in directing the enterprise's affairs is required" for RICO claim). Plaintiff alleges only that DBS Hong Kong maintained bank accounts that were owned and controlled by two other foreign entities. Compl. ¶ 62. Plaintiff does not plead that DBS Hong Kong had any substantive knowledge regarding the underlying transaction, let alone that it played any part whatsoever in directing the alleged "PZCoin pig-butchering enterprise." Compl. ¶ 34. Nor can Plaintiff overcome the absence of any particularized factual allegations of wrongdoing by pleading a conspiracy under 18 U.S.C. § 1962(d). At a minimum, this would require allegations that DBS Hong Kong knew of and agreed to the overall objective of the RICO offense, but Plaintiff pleads nothing of the sort. *See Beasley v. Greenlee*, 2024 WL 3851382, at *8 (N.D. Tex. July 25, 2024), *report and recommendation adopted*, 2024 WL 3851599 (N.D. Tex. Aug. 16, 2024). The most Plaintiff pleads is the vague (and erroneous) allegation that DBS Bank has "a history of enabling

criminal enterprises." Compl. ¶ 40. Those allegations are conclusory and not remotely sufficient to establish that DBS Hong Kong actually knew of and agreed to participate in an offense against Mr. Fuller.

Third, Plaintiff's common-law claims fare no better. To establish a claim for conversion, Plaintiff was required to show that DBS Hong Kong exercised wrongful dominion over Plaintiff's property, but there are no allegations that DBS Hong Kong did so. Rather, Plaintiff alleges that he wired funds to account holders at DBS Hong Kong, and thereby relinquished control over the property. To establish common law fraud, Plaintiff was required to plead facts with particularity establishing that DBS Hong Kong made an intentional misrepresentation on which Plaintiff relied, but there are no allegations that DBS Hong Kong made any representation or indeed had any communication with Plaintiff, let alone that it had intent to defraud. Plaintiff's claims for aiding and abetting liability also fail because Texas law does not recognize stand-alone aiding-and-abetting torts. *Hampton v. Equity Tr. Co*., 607 S.W.3d 1, 5 (Tex. App.—Austin 2020, pet. denied) ("In the absence of recognition by the Supreme Court of Texas or the Legislature, we conclude that a common-law cause of action for aiding and abetting does not exist in Texas."). Even if it did, Plaintiff alleges only previous regulatory fines—not actual knowledge and substantial assistance. Compl. ¶40. Because these defects are incurable, amendment would be futile. The Court should dismiss all claims against DBS Hong Kong with prejudice.

## II.    RELEVANT FACTUAL BACKGROUND

Plaintiff is Donald Fuller, allegedly a resident of Canyon, Texas. Compl. ¶6. On February 4, 2025, Plaintiff filed this lawsuit against various entities alleging that he was targeted through online communications in relation to a cryptocurrency trading platform called PZCoin.com, which

is not alleged to have (and does not have) any affiliation with DBS Hong Kong.  Compl. ¶¶ 5, 23–24.

*The Alleged Scam*.  Plaintiff alleges that he was originally solicited via Facebook by Hannah Smith, who then developed a relationship with Plaintiff and encouraged him to invest in cryptocurrency through online trading platform PZCoin.com.  Plaintiff alleges that he was persuaded to invest more than $1.2 million, but that when he sought to withdraw the funds, Defendants Hannah Smith, Anthony Zhou, and others associated with PZCoin.com, demanded payment of additional fees, verification, and "capital gains taxes." Compl. ¶¶ 5, 23-24, 28.  Plaintiff does not allege that he ever had any contact with a representative affiliated with DBS Hong Kong.

*Allegations Regarding DBS Hong Kong.*  Plaintiff alleges that he made three transfers totaling approximately $860,816 to two Chinese entities that owned and controlled bank accounts at DBS Hong Kong: Liante Industrial (two deposits totaling approximately $660,000) and Ychen Trade (one deposit totaling approximately $200,816).  Compl. ¶¶ 33, 35, 39.  The bank accounts identified in the Complaint were maintained entirely outside the United States and owned by Chinese entities, not U.S. citizens.  Appendix Ex. 1, Decl. of Mo Yin Ada Chiu ("Decl. ") ¶ 10.

DBS Hong Kong is a financial institution incorporated and headquartered in Hong Kong, with its principal executive offices and decision-making functions located there. Decl. ¶ 4.  It has no operations in the United States and is not registered or licensed to do business here. It does not have a registered agent, own or lease property, or employ officers or staff in the United States. Decl.¶¶ 5-8.  It also does not maintain any telephone listings or corporate books in the United States, and it pays no U.S. taxes.  Decl.¶ 8.  Nor does DBS Hong Kong solicit business in the United States or direct any conduct toward the United States.  Decl.¶¶ 6, 9.  Plaintiff does not allege that DBS Hong Kong ever initiated any contact with him.  Nor does he allege that DBS

Hong Kong had knowledge regarding the purpose of the underlying transactions or even the existence of a cryptocurrency platform called PZCoin.com.

## III.  ARGUMENT

Plaintiff asserts six causes of action against DBS Hong Kong: (1) RICO §1962(c); (2) RICO §1962(d); (3) conversion; (4) fraud; (5) aiding and abetting fraud; and (6) aiding and abetting conversion.  Compl. ¶¶ 43-76.  Each of these causes of action fails for the reasons set forth below.

### A.  The Court Lacks Personal Jurisdiction Over DBS Hong Kong

First, the Court should dismiss all claims against DBS Hong Kong because Plaintiff has not and cannot establish that this Court has personal jurisdiction.  To do so, Plaintiff was required to plead facts establishing that the Court can exercise either general or specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).  These constitutional limitations ensure that defendants are not haled into courts with which they have no meaningful connection.  *Walden v. Fiore,* 571 U.S. 277, 283–84 (2014).  Plaintiff alleges no facts sufficient to establish either.

#### 1.  No General Jurisdiction

Plaintiff makes no real effort to plead facts establishing a basis for this Court to exercise general jurisdiction over DBS Hong Kong.  "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation is fairly regarded as at home where it is incorporated or where it maintains its principal place of business.  *Id.* at 924.

5

DBS Hong Kong is incorporated and headquartered in Hong Kong. Decl. ¶ 4. It does not maintain offices, employees, or have material operations in the United States. Nor does it own any real property in the United States; maintain any offices in the United States; have any officers, directors, or permanent employees that reside in the United States; or have any telephone listings in the United States. Decl. ¶ 8. It is therefore not "at home" in Texas under the paradigmatic forums for general jurisdiction. *Daimler*, 571 U.S. at 137. The Supreme Court has emphasized that only in an "exceptional case" can a corporation be subject to general jurisdiction outside those forums. *BNSF Ry. Co. v. Tyrrell,* 581 U.S. 402, 413 (2017).

Courts have rejected general jurisdiction even where defendants had far greater contacts with the forum. *See Garcia Hamilton & Assocs., L.P. v. RBC Capital Mkts., LLC*, 466 F. Supp. 3d 692, 699–700 (S.D. Tex. 2020) (no general jurisdiction where defendant employed hundreds in Texas); *Monkton*, 768 F.3d at 432 (noting it is "incredibly difficult" to establish general jurisdiction outside paradigmatic forums). Allegations that DBS Hong Kong has foreign accounts that received wires do not suffice. Compl. ¶ 39. As the Court held in *Daimler*, "a corporation that operates in many places can scarcely be deemed at home in all of them." 571 U.S. at 139 n.20.

2. *No Specific Jurisdiction*

Plaintiff also fails to establish that this Court can exercise specific (or claim-based) jurisdiction. To establish specific jurisdiction, Plaintiff has the burden to establish that DBS Hong Kong "(1) purposefully avail[ed] itself of the privilege of conducting business in the forum state; (2) the plaintiff's claims arise out of or relate to the defendant's minimum contacts; and (3) maintaining the suit in the forum state would not offend traditional notions of fair play and substantial justice." *CDC Real Estate Corporation v. La Biela, L.L.C.*, 2025 WL 2219009, *3 (5th

Cir. Aug. 5, 2025). The jurisdictional nexus to support specific jurisdiction "must arise out of contacts that the defendant himself creates with the forum State." *Walden*, 571 U.S. at 284.

Here, Plaintiff alleges that **he** initiated wire transfers from Texas to two Chinese entities, and that those entities owned and controlled bank accounts at DBS Hong Kong. Compl. ¶ 39. Plaintiff's unilateral acts cannot create jurisdiction over DBS Hong Kong. *La Biela*, 2025 WL 2219009, at *2 ("To be sure, the plaintiff cannot be 'the only link between the defendant and the forum.'") (quoting *Walden*, 571 U.S. at 285); *Getagadget, L.L.C. v. Jet Creations Inc.*, 2022 WL 964204, at *3 (5th Cir. Mar. 30, 2022) ("[T]he mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.") (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)). This principal applies with even more force here because Plaintiff's acts were directed toward other defendants that owned and controlled the bank accounts. This is insufficient as a matter of law to establish that this Court has personal jurisdiction over DBS Hong Kong.

Moreover, courts routinely reject attempts to base jurisdiction on routine banking services. The Fifth Circuit dealt with the same situation in *Monkton Ins. Servs., Ltd. v. Ritter,* and held that wire transfers requested by a plaintiff cannot supply a basis for specific personal jurisdiction. 768 F.3d 429, 433–34 (5th Cir. 2014). There, a Texas resident argued for specific jurisdiction over a Cayman bank based on wire transfers to accounts at the bank. *Id*. The Fifth Circuit rejected this argument because "the wire transfers facilitated by [the Cayman bank] were initiated by [appellants] and [were] thus insufficient to confer jurisdiction." *Id*. at 433. This result flowed from the precept that "the relationship must arise out of contacts that the defendant *himself* creates with the forum state." *Id*. (quoting *Walden*, 571 U.S. at 284) (original emphasis from Supreme Court). Indeed, "federal courts routinely decline to use money transfers as a basis for specific jurisdiction

because the wire transfer is done at the plaintiff's request." *Thuney v. Lawyer's Title of Az.*, 2019 WL 467697, at *6 (D. Ariz. Feb. 6, 2019) (original emphasis) (discussing *Monkton* and collecting cases);[1] *Zidell*, 2025 WL 919385, at *3–4 (dismissing claims against multiple banks that processed wire transfers related to an alleged internet scam, holding that plaintiffs failed to establish personal jurisdiction even though the banks maintained branch offices in Texas).

Plaintiff alleges that he initiated wire transfers to two Chinese entities that held bank accounts at DBS Hong Kong. Plaintiff does not allege that DBS Hong Kong had any reason to suspect these two entities were engaged in wrongdoing or were part of an alleged "PZCoin pig-butchering enterprise." Compl. ¶ 34. Nor does Plaintiff allege that DBS Hong Kong had any knowledge regarding the purpose of the transaction or took any affirmative action to avail itself of U.S. law or direct activities at Texas or the United States. *See* Compl. ¶ 33 ("Mr. Fuller made a wire transfer … to an account held at DBS Bank"). The sum total of DBS Hong Kong's alleged activity is the *passive receipt* of *three* wire transfers—transfers DBS Hong Kong did not request or solicit, and that were not in any way alleged to have been outside the ordinary course of business for DBS Hong Kong. Having failed the specific-jurisdiction test at the very first step (forum-related contacts), Plaintiff cannot satisfy the second step (demonstrating that his claim arises from the forum-related contacts). *See Monkton*, 768 F.3d at 433. And because Plaintiff has failed those steps, exercising personal jurisdiction over DBS Hong Kong would not be fair and reasonable. *Id.*

3. *The Exercise of Personal Jurisdiction Would Be Unreasonable.*

Even if Plaintiff could establish minimum contacts (he cannot), the Court must still consider whether exercising jurisdiction would comport with "fair play and substantial justice."

---

[1] *See Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489, 495 (6th Cir. 2008) ("The wire transfers accepted or confirmed by Lloyds from Tennessee and any wire transfers originated by Hogsed in the United Kingdom and sent to Tennessee cannot constitute purposeful availment, because none of those transfers were initiated by Lloyds.").

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  The Fifth Circuit evaluates this reasonableness inquiry by weighing (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the shared interest of the states in furthering substantive social policies.  *Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d 266, 276 (5th Cir. 2006).  Each factor favors dismissal.

First, the burden on DBS Hong Kong in litigating in Texas would be extraordinary.  It is incorporated and headquartered in Hong Kong, is not registered to do business in the United States, maintains no offices, property, employees, or books here, and would be forced to defend this action with all relevant witnesses and records located abroad.  Decl. ¶¶ 4, 6–8, 13; *see Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty*., 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."); *Harris*, 281 F. App'x at 495 ("None of [the bank's] alleged wrongdoings occurred within [the forum state], and the United Kingdom has a significant interest in regulating the financial institutions operating within its borders[.]").

Second, Texas has at most a minimal interest in resolving claims against DBS Hong Kong for the simple reason that DBS Hong Kong has never directed activities toward Texas and does not solicit customers in Texas or the United States.  Decl. ¶¶ 7–9.

Third, while Plaintiff may prefer Texas as a forum, effective relief cannot be obtained here. The transfers he identifies were payments he sent to accounts maintained by foreign entities.  Decl. ¶¶ 10–11.  DBS Hong Kong has no assets or presence in the United States, and any judgment entered against it in Texas would face significant enforcement obstacles abroad. Decl. ¶ 13.  In

9

these circumstances, litigating in Texas would not enhance Plaintiff's ability to obtain meaningful recovery, and could very well present obstacles to the efficient resolution of this case against those defendants alleged to have actually engaged in wrongdoing.

Fourth, efficiency weighs heavily against exercising jurisdiction over DBS Hong Kong. All relevant witnesses, documents, and decision-making personnel for DBS Hong Kong are located abroad. Decl. ¶ 13. Because DBS Hong Kong has no offices, employees, or records in the United States, litigating in Texas would complicate rather than streamline resolution of this dispute.

Finally, broader policy considerations confirm that jurisdiction would be improper. Stretching the limits of jurisdiction to reach a foreign bank with no U.S. presence based solely on allegations that the bank provided banking services would undermine principles of international comity and set troubling precedent. Respecting jurisdictional limits protects the shared interests of foreign states and the United States as a whole in maintaining predictable and fair rules for cross-border disputes.

In short, even assuming that Plaintiffs could establish minimum contacts, the exercise of personal jurisdiction over DBS Hong Kong would be unreasonable and inconsistent with due process.

B. Plaintiff's Substantive RICO Claims Fail (Counts I)

Apart from jurisdictional deficiencies, Plaintiff's substantive RICO claim under 18 U.S.C. § 1962(c) also fails as a matter of law. To state a claim under § 1962(c), a plaintiff must plausibly allege: (1) the existence of an enterprise; (2) that the defendant conducted or participated in the conduct of the enterprise's affairs; (3) through a pattern of racketeering activity; and (4) that the plaintiff was injured in his business or property by reason of the violation. *Reves*, 507 U.S. at

187.  Because Plaintiff's RICO claim rests on alleged predicate acts of fraud, he was required to plead the circumstances of that fraud with particularity under Rule 9(b).  *Molina-Aranda v. Black Magic Enters., LLC*, 983 F.3d 779, 784 & n.2 (5th Cir. 2020) ("[P]laintiffs alleging fraud must additionally describe, in short, 'the who, what, when, and where' supporting their fraud allegations.").  Plaintiff does not come close to meeting this burden.

      1.  *Plaintiff Fails to Establish that DBS Hong Kong Participated in an Alleged Enterprise.*

First, Plaintiff fails to plead facts establishing that DBS Hong Kong "participate[d] in the operation or management of the enterprise itself." *Reves*, 507 U.S. at 185.  Plaintiff describes the alleged enterprise as the "PZCoin pig-butchering enterprise." Compl. ¶ 38.  But Plaintiff alleges no well pled facts that DBS Hong Kong even had knowledge of such an enterprise, much less that it participated in or conducted the enterprise.  The Complaint alleges only that two foreign entities owned and controlled bank accounts with DBS Hong Kong, and that Plaintiff sent those entities wire transfers.  Compl. ¶ 33.  The allegations do not suggest DBS Hong Kong directed anything, and certainly do not suggest it directed a RICO enterprise. *See Reves*, 507 U.S. at 179 (RICO requires establishing defendant played "*some* part in directing the enterprise's affairs").

In any event, providing ordinary banking services—even important ones—does not establish participation in an enterprise for purposes of RICO liability. *See Goodweather v. Parekh*, 2021 WL 4149030, at *3 (E.D. Va. Sept. 10, 2021) ("[C]ourts also take care to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions.") (internal quotations and citations omitted).  Courts that have considered similar theories have rejected them. *See Chay v. Montiel*, 2025 WL 972829, at *12 (S.D. Tex. Mar. 11, 2025), *report and recommendation adopted*, 2025 WL 963591 (S.D. Tex. Mar. 31, 2025) ("To establish RICO liability, a plaintiff must show that there is a pattern of racketeering activity, as opposed to just a

single, otherwise lawful transaction") (internal quotation and citation omitted); *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009) (defendant having an alleged "business relationship with" or "perform[ing] services for" a putative RICO enterprise does not trigger liability); *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1101–02 (10th Cir. 1999) (holding that defendants could not be held liable under RICO because they did nothing more than "provide their regular services" despite plaintiff's claims that they "allowed, if not actively encouraged," the scheme perpetrators).

Accordingly, the Court should dismiss the RICO claims because Plaintiff's allegations are insufficient to establish that DBS Hong Kong participated in the "operation and management" of a RICO enterprise. *See, e.g., Gutierrez v. Venegas*, 2021 WL 9314946, at *5 (N.D. Tex. Sept. 8, 2021) (dismissing RICO claims because "Plaintiffs do not provide any facts to show [defendant] knowingly participated in the enterprise's alleged criminal activities"); *Lerner v. Colman*, 485 F. Supp. 3d 319, 340 (D. Mass. 2020) (dismissing § 1962(c) claims against two defendants for failure to include "some allegation[s] that the two men aided ... in executing the scheme"); *Liberty Mut. Ins. Co. v. Diamante*, 138 F. Supp. 2d 47, 57 (D. Mass. 2000), *report and recommendation adopted*, 138 F. Supp. 2d 47 (D. Mass. 2001) (dismissing § 1962(c) claims "consequent to inadequate pleading with respect to the element that [defendant] 'participated in the conduct of the enterprise[s]' affairs").

### 2.  The Complaint Fails to Allege a Pattern of Racketeering Activity

Second, Plaintiff also fails to allege that DBS Hong Kong was engaged in a pattern of racketeering activity.  Plaintiff attempts to plead a "pattern" by pointing to allegations that DBS Hong Kong processed transfers into accounts controlled by other defendants and cites to unrelated regulatory fines and warnings related to anti–money laundering compliance.  Compl. ¶¶ 39–41.

But those allegations do not identify any wrongful acts by DBS Hong Kong in relation to the claims here, much less related predicate acts that amount to, or pose a threat of, continued criminal activity. To state a claim under § 1962(c), a plaintiff must adequately plead a pattern of racketeering activity, meaning at least two predicate acts that are related and that reflect continuity. *Molina-Aranda*, 983 F.3d at 784. Courts regularly dismiss RICO claims when the alleged predicate acts are vague, conclusory, or fail to show the necessary continuity. *See, e.g., Anderson v. CitiMortgage, Inc*., 2011 WL 1113494, at *4 (E.D. Tex. Mar. 24, 2011) ("[T]he Court finds that the allegations for mail and wire fraud under RICO are not sufficient and are merely conclusory allegations of mail/wire fraud which fail to allege sufficient facts to state a RICO action."); *Licht v. Binance Holdings Ltd*., 2025 WL 625303, at *38–40 (D. Mass. Feb. 5, 2025), *report and recommendation adopted*, 2025 WL 624025 (D. Mass. Feb. 26, 2025) (dismissing RICO claim because allegations of wire fraud were conclusory and did not establish a pattern of racketeering).

Here, Plaintiff does not allege any racketeering acts by DBS Hong Kong itself. The Complaint lumps DBS Hong Kong together with other defendants, but does not identify any predicate acts, let alone two or more, committed by DBS Hong Kong. Compl. ¶¶ 39–41. Nor does Plaintiff allege facts showing continuity. His allegations describe passive receipt of a limited number of transfers into accounts abroad, which courts have held is insufficient to establish RICO violations. Because Plaintiff fails to allege that DBS Hong Kong committed even one predicate act of racketeering, and certainly does not plead a pattern of such acts, Count I fails.

C. Plaintiff's RICO Conspiracy Claim Fails (Count II)

Plaintiff's RICO conspiracy claim under 18 U.S.C. § 1962(d) fares no better. Section 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c)." Thus, a plaintiff must allege facts showing that the defendant knowingly joined an

agreement with others with the objective of committing a substantive RICO violation. *Davis-Lynch, Inc. v. Moreno,* 667 F.3d 539, 551 (5th Cir. 2012). Yet the Complaint does not allege that DBS Hong Kong even knew of the existence of PZCoin.com before this lawsuit, or that it ever communicated with Plaintiff, solicited his business, or had knowledge regarding the underlying transaction. Decl.¶ 12. The only DBS Hong Kong-related allegation is that Plaintiff's funds were routed to accounts controlled by other defendants. Compl. ¶ 39. Indeed, Plaintiff concedes that any involvement by DBS Hong Kong was "inadvertent[]." Compl. ¶ 4.

The most that could be inferred from Plaintiff's allegations is that DBS Hong Kong knew that there had been three wire transfers to accounts owned and controlled by other defendants. But courts dismiss conspiracy claims where plaintiffs allege only awareness of parallel conduct, as is the case here. *See Gutierrez*, 2021 WL 9314946, at *8 ("A person cannot be held liable for a RICO conspiracy 'merely by evidence that he associated with other . . . conspirators or by evidence that places the defendant in a climate of activity that reeks of something foul."); *Davis-Lynch,* 667 F.3d at 551 ("To demonstrate a civil RICO conspiracy, a claimant must show that: (1) two or more persons agreed to commit a substantive RICO offense, and (2) the defendant knew of and agreed to the overall objective of the RICO offense."). Plaintiff alleges no agreement between DBS Hong Kong and any of the other defendants. Rather, the Complaint merely concludes that DBS Hong Kong "acted with knowledge of the conspiracy's unlawful objectives and with the intent to further its goals." Compl. ¶ 53. These are legal conclusions masquerading as factual allegations, and accordingly the Court need not give them any weight. *Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

14

In sum, Plaintiff has not alleged facts establishing any element of a RICO conspiracy involving DBS Hong Kong, and therefore Count II should be dismissed.

D.  Plaintiff's Conversion Claim Fails (Count III)

Plaintiff's common law conversion claim fails as a matter of Texas law because he does not establish that DBS Hong Kong wrongfully exercised dominion or control over Plaintiff's funds.  To state a conversion claim under Texas law, a plaintiff must allege that "'(1) he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused.'" *United States v. Boardwalk Motor Sports, Ltd*., 692 F.3d 378, 381 (5th Cir. 2012) (applying Texas law) (quoting *Arthur W. Tifford, PA v. Tandem Energy Corp*., 562 F.3d 699, 705 (5th Cir. 2009)).  "Conversion claims for money must meet additional requirements" under Texas law.  *Id*.  "'Specifically, actions for conversion of money are available in Texas only where money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper.'" *Id*. (quoting *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007)).

Here, the Complaint does not allege that Plaintiff's funds were deposited into DBS Hong Kong's accounts, but rather that funds were wired to "bank accounts owned by a series of business entities and controlled by members of the PZCoin syndicate," *i.e.*, Liante Industrial Co., Limited and Ychen Trade Co., Limited.  Compl. ¶ 32.  Plaintiff claims that DBS Hong Kong's wrongful conduct was "providing essential banking services that facilitated the transfer, concealment, and laundering of stolen funds," but Plaintiff does not allege that DBS Hong Kong had any knowledge regarding the underlying transaction or in any way acted outside the ordinary course of its business

(*i.e.*, banking).  That is not conversion, but simply the performance of routine banking services that cannot, as a matter of law, amount to the wrongful exercise of dominion required for the tort.

Applying these principles, the Eastern District of Texas, in *Solutions v. First State Bank of Brownsboro*, dismissed conversion claims brought against a bank where it was alleged that the bank placed "the funds in the possession of a known fraudster."  2020 WL 12991132, at *7-8 (E.D. Tex. Apr. 16, 2020).  The court held that by directing that funds be deposited into a third party's account, the plaintiff "voluntarily parted with its money and disclaimed all right to possession or ownership of the funds."  *Id.* at *8.  The result should be the same here, as DBS Hong Kong has done nothing more than passively receive wire transfers from Plaintiff which were processed pursuant to usual banking transactions pursuant to the Plaintiff's own instructions.  *See Sinclair Houston Fed. Credit Union v. Hendricks,* 268 S.W.2d 290, 295 (Tex. App.—Galveston 1954, writ ref'd n.r.e.) ("One who receives money which has been illegally obtained by a third party in due course of business, in good faith, and for valuable considerations, can keep it without liability to him from whom it was stolen."); *Shawmut Worcester Co. Bank v. First Am. Bank & Trust*, 731 F. Supp. 57, 60 (D. Mass. 1990) (dismissing conversion claim against bank that processed electronic funds transfer request according to account number provided, even though one owner of account was not the intended beneficiary).

E.  Plaintiff's Fraud Claim Fails (Count IV)

Plaintiff's fraud claim against DBS Hong Kong similarly fails.  The elements of fraudulent misrepresentation in Texas are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff

act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Ison-Newsome v. JPMorgan Chase Bank, Nat'l Ass'n*, 2023 WL 5022287, at *6 (N.D. Tex. July 21, 2023), *report and recommendation adopted*, 2023 WL 5022681 (N.D. Tex. Aug. 7, 2023).

Plaintiff does not allege that DBS Hong Kong made any representations at all, much less misrepresentations with the intent to deceive and upon which Plaintiff relied. Instead, he asserts conclusory allegations that DBS Hong Kong is liable for "fraud" because it processed his wires into accounts controlled. That is not a colorable fraud claim.

Because Plaintiff does not allege that DBS Hong Kong knowingly made a material misrepresentation (or indeed any representation)—or any other element of a fraud claim as it relates to DBS Hong Kong—Count IV should be dismissed.

F. <u>Plaintiff's Aiding and Abetting Claims Fails (Count V & VI)</u>

Counts V and VI allege that DBS Hong Kong aided and abetted fraud and conversion by other defendants. These claims fail because Texas does not recognize a common-law cause of action for aiding and abetting. *Hampton v. Equity Trust Co.*, 607 S.W.3d 1, 5 (Tex. App.—Austin 2020) (A "common-law cause of action for aiding and abetting does not exist in Texas."). The court in *Hampton* explained that "[a]bsent legislative or supreme court recognition of the existence of a cause of action, we … will not be the first to do so." *Id*. at 4 (citing *Anderson v. Archer*, 490 S.W.3d 175, 177 (Tex. App.—Austin 2016), *aff'd sub nom*, *Archer v. Anderson*, 556 S.W.3d 228 (Tex. 2018)); *First United Pentecostal Church v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017) (reiterating that "this Court has not expressly decided whether Texas recognizes a cause of action for aiding and abetting"). In any event, Plaintiff does not plead a single fact, with particularity or otherwise, suggesting that DBS Hong Kong had knowledge regarding any alleged wrongful conduct by other defendants or otherwise assisted or encouraged other defendants in committing

any wrongful act.  Accordingly, Plaintiff's common law claims in Counts V and VI for aiding and abetting conversion and fraud fail as a matter of law and must be dismissed.

G.  <u>Amendment Would Be Futile</u>

Leave to amend should be denied where the underlying defects cannot be cured by additional pleading.  *See Vlasek v. Wal-Mart Stores, Inc.*, 2007 WL 2402183, at *3 (S.D. Tex. Aug. 20, 2007).  That is the case here.

First, the jurisdictional deficiencies are structural and cannot be cured.  DBS Hong Kong is incorporated and headquartered abroad, has no presence in Texas, and Plaintiff's own allegations show that DBS Hong Kong did not avail itself of U.S. law whatsoever in relation to the underlying claims.  Courts have consistently held that such facts cannot support either general or specific jurisdiction.

Second, Plaintiff's RICO claims fail on multiple independent grounds, including because Plaintiff fails to plead that DBS Hong Kong operated or managed an enterprise or had knowledge of any such enterprise.  Plaintiff's common law claims also fail as a matter of law.  Conversion requires wrongful dominion or safekeeping of funds, which Plaintiff has not and cannot allege. Fraud requires a misrepresentation and reliance, but Plaintiff does not (and cannot) allege that DBS Hong Kong made any representations.  Texas law does not recognize stand-alone claims for aiding and abetting, foreclosing Counts V and VI entirely, and, in any event, Plaintiff fails to plead facts establishing that DBS Hong Kong knowingly assisted or encouraged any wrongful conduct.

Because these defects go to the nature of the claims and the governing law, not to the sufficiency of factual detail, amendment would be futile.

## IV.    CONCLUSION

DBS Hong Kong is a foreign bank with no presence in Texas, and there are no allegations that it had knowledge or awareness of the acts giving rise to this case, much less that it directed or encouraged those acts.  The Complaint's jurisdictional and substantive defects are incurable. Accordingly, DBS Hong Kong requests that the Court enter the proposed order filed concurrently herewith dismissing all claims against DBS Hong Kong with prejudice.


DATED:  September 10, 2025          */s/ Mason Parham*
                                    MASON PARHAM


                                    Texas Bar No. 24088182
                                    NICK GREENBERG
                                    TX Bar No. 2413135
                                    **SIDLEY AUSTIN LLP** 5
                                    2021 McKinney Avenue, Suite 2000
                                    Dallas, TX  75201
                                    Telephone:  214/981-3300
                                    214/981-3400 (fax)
                                    mparham@sidley.com
                                    ngreenberg@sidley.com
                                    Attorneys for DBS Bank (Hong Kong) Limited


## CERTIFICATE OF SERVICE

I hereby certify that I am counsel for Defendant DBS Bank (Hong Kong) Limited in this action and that on September 10, 2025, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

                                    */s/ Mason Parham*